Excuse me. The next case called is People v. Crump. Counsel? Thank you, Your Honor. Good morning, Your Honors, and may I please report, Counsel? This is a consolidated appeal concerning the judgments of conviction in two related cases based on a plea agreement that covered both. In this appeal, Mr. Crump challenges the dismissal of his petition for relief from judgment and denial of his request to file an amended one requiring de novo review by this Court, in which he claimed that both judgments of conviction against him were void. In 2002, this Court found that the sentence entered in one of the cases, 90 CF 17, was void. Because that sentence was one of the terms on which the plea agreement was predicated, the prevailing case law, following well-established rules of contract law, informs us that the appropriate remedy on facts of this case should allow, should compel the conclusion that the judgment of conviction are also void. Mere reformation of the sentence, which did occur in 2002, is not an adequate or appropriate remedy on the facts of this case for an additional reason, and this is the second issue that I raised in our brief. Namely, that Mr. Crump has been discharged from his duty of performance under the plea agreement, and his convictions must be vacated under the contract doctrine of discharge by supervening frustration, more commonly referred to simply as frustration of purpose in contract law. Therefore, the Court should have granted Mr. Crump leave to file his amended petition for relief from judgment, and should have granted him the relief requested therein. Are you asking, it was unclear to me, are you saying that the Court has never ruled on the combination of the judgments 17 and, I'll refer to them as 17 and 18? Is that what you're saying here? Well, in part, it never reached the issue of the judgments of conviction themselves, because that was not raised in Mr. Crump's initial petition. He only challenged his sentence, and he only challenged his sentence in CF 17. We did affirm the 18, though, in both earlier PCs, correct? I don't know. Without consulting the record, I don't recall if that was done explicitly. It was done explicitly in the actual orders. Yes, the sentence was, but again, what was... Well, we went further than that. We found that the trial court was not unduly influenced when it sentenced him to natural life in 18, even if it was aware that the sentence in one was improper. That's correct, but that was also a different and, frankly, frivolous argument, which our office even filed a Finley brief in that one, because there was never really a solid argument as to how the one sentence influenced the other sentence. The issue we're raising now is different. The issue we're raising now is based on well-settled case law, a long body of case law that holds that if the sentence is void, if it's unauthorized by law, which this court did appropriately find, then the plea agreement is also void, and the judgments of conviction are also void. And this is the first time... Well, what about the influence of Castleberry? Now we don't have void anymore. We have void of both. Well, we still have the void. The void judgment rule still applies. It's only the void sentence rule that has been set aside. But even if Castleberry is retroactive, and the prevailing case law seems to indicate that it is, that only affects cases that are still pending. That does not affect every appellate decision going back. In this case, it would have to go back to 2002 or to the beginning of time. Retroactivity only affects pending cases, not settled judgments. But you're relying on that to set aside the agreement, the contract, if you will. You're talking about a contract, which I thought was an interesting argument, by the way. But if there is no void sentence, how can there be a void contract? Because ARNA was in effect when this court ruled, and it ruled that it was a void sentence, and Castleberry or not, retroactivity or not, that is a settled judgment in this court, and it cannot be disturbed. And therefore, the string of cases that we rely upon, from the Supreme Court in Wayne all the way through the Gregory case in the Fourth District in 2008, all of that still applies. What about Stafford, people versus Stafford? Offhand, I don't recall which one that was. I don't think that was cited in my brief, at least. No, it was not. It's a very recent case out of the Fourth in which they held that, which there was a challenge as to the sentence being void, and that Castleberry did not apply retroactively. And the court held that Castleberry did not create a new rule of law that simply abrogated ARNA and reinstated Davis. Right. And again, if Mr. Castleberry was challenging his sentence now, that would be an argument I'd have to contend with. But here, we're not talking – retroactivity does not reach settled judgments of the appellate court. Here, we're relying on a settled judgment decided at a time when ARNA was in effect, and this body of case law still pertains. There's nothing in Castleberry to suggest that the void judgment rule itself was being overturned. It was limited to overturning ARNA and that body of case law. So, as Justice Chapman indicated, there have been findings by this court as to Mr. Crump's sentence, conviction. This comes up on a 2-1401, correct? Correct. Something totally different now than a post-conviction petition. Right. I mean, this is a civil issue. True. A civil matter. But it's the typical vehicle used for challenging a void judgment. And why wasn't this brought up earlier? I can't speak to Mr. Crump's state of mind in 2002 or why that legal argument did not occur to him, but the rule that a void judgment may be attacked at any time still pertains, and it was not overturned by Castleberry. So, this body of case law that we rely upon is still the prevalent law in Illinois. Granted, there was one outlier case that I did also cite and explain why I thought it was. Is that the Hubbard case? The Hubbard case, and I did explain in a brief why I felt that was wrongfully decided. But contract law does still apply. The fact remains. Let's talk about contract law. He did get the benefit of his bargain under contract law. He's still alive. And that was what he was attempting to avoid was a death penalty, correct? That is correct. Obviously, that was his motivation. And that kind of segues into the second issue that I raised is that now there is no longer a death penalty to avoid. That was an unforeseen circumstance at the time that the bargaining took place. And so the consideration that Mr. Trump gave, giving up his right to trial, the attendant right to confront the accusers, the witnesses against him and his accusers, all of the rights of the attendants, the right to trial, he gave up based on a mutually assumed. Except that he could have been executed any time after he made that. It was overturned in what, 2011? Overturned in 2011. So, I mean, any time during that period of time, he could have been executed. He could have. That was the benefit of the bargain that he got is that he was still alive up until 2011 and very likely would not have been. And that wasn't frustrating. Well, actually, I would respectfully disagree. First of all, the moratorium was in effect for at least an 11-year period prior to the repeal of the death penalty. That was also an unforeseeable or unforeseen circumstance at the time that the parties bargained. Clearly, it would not have been an expectation that an execution would have taken place in 8 or 10 years. Just looking at the track record of things, we know that he would have had to have exhausted all of his appeals, his federal habeas appeal. That process, anyone on death row at that time knew that process would take a very, very long time, typically much longer than 8 or 10 years. I can address that verbatim, if at all. And we, of course, have read your brief. Yes, thank you. Thank you. Counsel? Thank you, Your Honors. Your Honors, counsel, may it please the Court, I'm Kelly Stacy appearing on behalf of the state. I did not read this case, and I have not had an opportunity to read the record on appeal. When the office requested it, I think it had already made its way to one of the members of the bench. This case has been going on at least for the initial post-conviction petition since 2001. I think I authored the first and second orders, and I went on the bench in 2001. It's correct, Your Honor. I've been married to it, so to speak. Yes, you definitely have. So we have, in this case, two post-conviction petitions filed. We've had a Henley motion filed by OSAD, and now we have a 214-01 petition. So we've kind of reached this point for many different vehicles. The problem for the defendant is he's trying to attack this judgment in a 214-01 petition, and there are requirements under 214-01 that have to be met in order to use that vehicle as a collateral attack. This is not a direct appeal. So do you think we—what about the void, the issue that it could be really—I mean, don't we have to address that or not? Can we go straight to the merits as to whether or not it falls under 214-01? In my opinion, the void and void rule issue must be addressed by this Court. And Castleberry was the case that abrogated—there was a void sentencing rule from People v. Arnett. And I believe this Court even relied on that in modifying that sentence. Not only this Court, many courts did. But since that time, the—well, there was a case in 1993, People v. Davis. And Castleberry spoke about the Davis case, the 1993 Davis case, as well as People v. Arnett. And in Castleberry, what the Supreme Court did there, they abrogated the void sentencing rule in People v. Arnett. And that, again, stated a sentence which does not conform to a statutory requirement is void and can be attacked at any time. But Castle— What does that say about the judgment, though? Here we've got a sentence in the 17, and we've got a sentence in the 18. We have a sentence in the 17 and in the 18. But what Castleberry did was look at the Davis Court that said whether a judgment is void or voidable, and I'm quoting from the Davis case now, presents a question of jurisdiction. Where jurisdiction is lacking, any resulting judgment rendered is void and may be attacked at any time, either directly or indirectly. So we're talking about either on a direct appeal or on a collateral attack. But his argument is—and I think we all understand the void versus voidable. His argument is that we can't retroactively rely on People v. Davis or apply Castleberry. I disagree with that. I believe that even in the Davis case, which, again, was issued in 1993, it relied on a 1943 case. Whether a judgment is void or voidable presents a question of jurisdiction. It really tracks pretty much what Castleberry stands for now. Yes. But what about the fact that ARNA came after Davis? On the void sentencing? Yes. Well, I think what happened on this case is the sentencing part that was not authorized, this court already corrected. Not only did this court correct it, this court gave the defendant exactly what he asked for. The State conceded that the defendant should not have been subjected to the life sentence as an habitual criminal because the way the sentencing worked out, he had not had that third conviction. But he's saying that the whole judgment was void. I don't see how the whole judgment was void. If that's correct, then this court never had jurisdiction and neither did the trial court. I disagree with counsel's argument on the very first post-conviction petition, which this court filed a Rule 23 order in 2002. He raised an issue with respect to 90 CF-17 on the 60 years imprisonment. He raised nothing on the other case, the 90 CF-18. These cases went together. They're a consolidated appeal. You can't piece in your litigation, which is what the defendant is trying to do here. But now he's saying he can because void issues can be raised at any time. There is nothing. And it's true, a void judgment can. Right. I believe the void sentencing issue, that's no longer an issue in this case because this court did correct that. Also, in the initial Rule 23 order, this court says the judgment in 90 CF-18 is affirmed. So, again, what we have here, even if you look at the void, if you want to talk about a void sentencing provision, under the 213-01, you still have the problems, like you would on a post-conviction petition, of forfeiture, waiver, race judicata. These things have already been decided. So you say we have to look at the merits. And I believe if you look at the merits, this court already affirmed the judgment in 90 CF-18. He's trying to lump these both together and lump it in to make it fit into a 214-01, which I do not believe it can fit there, because you can't just restate things on a 214-01 petition that have already been raised in a post-conviction petition or that could have been raised. And all of these things could have been raised. There's really no problem with that naturalized sentence on the first-degree murder case. Nothing was ever being raised. There was an opportunity to raise that. So even if you get past the whether or not you have to look at Castleberry, this is not a void judgment in this case. The defendant has had every opportunity to present an argument on these issues. And I agree with Justice Cates, this is a very novel approach on looking at a contract issue. But these were pleas that were entered, and the consideration was to take the death penalty off the table. That occurred for this defendant. I think it's even in the brief somewhere that that was the goal. I believe that the defense counsel concedes that. Concedes it, yes. And I believe he also rightly concedes that that death penalty, that it's not retroactive. So it's not going to go back and reach that plea. I think that was in footnote 5 here. I believe that's actually a concession. So as a result of all of these, the two post-conviction petitions, this 214-01 petition, nothing really has changed here. The defendant got the relief that he requested and, frankly, the relief he was entitled to, which was having that sentence modified from the natural life sentence, which should not have been entered, to the 60-year sentence. I believe this court was correct on both of those Rule 23 orders. And if there aren't any further questions, I'll end it early and respectfully ask you to affirm. I don't believe they're right. Thank you, Counsel. Counsel? Thank you, Your Honors. First of all, with respect to the retroactivity of the Castleberry position, again, retroactivity does not allow this court or any court to disturb settled judgments of the appellate court. If the State's argument that I just heard is relied upon by this court, then that would allow the State to file two 14-01 petitions, in every case decided by every reviewing court during the Arnum period. Was Davis ever overruled? Well, I believe Davis was overruled by Arnum. And then Arnum has since been basically as the one appellate court's decision that you cited earlier, basically determined is that basically it restored the rule of Davis. That was the effect of Castleberry. But none of that allows the disturbance of this court's Rule 23 order or any similar appellate court order that was reached in 2002. And for that, as far as the argument that, well, this same challenge could have been raised at any time, that doesn't apply here. Forfeiture does not apply when you are collaterally attacking a void judgment. That is clearly what Mr. Crump is doing, and that is our position here. We are allowed to do it for the forfeiture doctrine. Why is the judgment void and not just the sentence? Because the sentence was an essential term of the agreement. And applying well-settled rules of contract law, that means that the contract itself is void, the plea agreement is void, and therefore the judgment has to be void. Why was it an essential term when he got the benefit of his bargain? Because it was clear at the time the agreement was reached that the state wanted him to serve to impose two natural life sentences. But it only takes one to have a natural. I mean, there is only one natural life, and he still had the other natural life imposed. So, I mean, take away one, the cases that you cite are not analogous in that here that he still had a natural life looming over him. True. But that was, you have to look at the intent of the parties at the time the contract was formed, and clearly the state wanted that insurance policy at the time. It's reflected in the record where— Your client was that he wanted to avoid the possibility of a death sentence. Absolutely. And he did get that benefit under both scenarios, under 17, even after 17 was reduced. Sure. But the state's promise to him of not imposing the death penalty on him is now worthless because he's not facing that anyway. And that's where the doctrine of— Well, that's—you're bootstrapping all kinds of things onto— Well, it follows well some of the case law. The three requirements that have to be met for a frustration of purpose to be satisfied are all clearly met in this case. If the worst thing that could have happened to Mr. Crump in 1990 was a natural life sentence, there was no way he would have bargained for that. That was the second worst thing that could have happened to him. Why would he—if it turned out it was actually the worst thing that could have happened to him, why would he have accepted that? He would have asserted his right to go to trial. But then you now have to assume that he knew that he couldn't possibly get to be executed prior to 8 or 10 years. You have to add a lot of limitation—limiting factors in there to get that frustration of purpose. It was an assumption on which the contract was based was that the death penalty was available. Yes. And that was a mistaken assumption. It was not going to be available after about 8 or 10 years. That was being taken off the table. If you look at the analysis from Booner, if you look at well-established Blackwater contract law, all three elements of the doctrine of frustration of purpose were met here. And this is an argument that is not—the State, I would point out, has not answered our argument. And under the first part of our brief, the first section of our brief, which is really reliant on well-settled case law, and they didn't answer the second argument. Instead, they're trying to argue, well, Castleberry takes this—takes care of this. But it doesn't. It clearly does not. Retroactivity does not allow the court to revisit seldom judgments. Thank you. Thank you, counsel. We appreciate the briefs and arguments of counsel. We'll take the case under advisement. Court will be in recess until 1 p.m. All rise.